IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID DEWALD, II,<br><br>      *Plaintiff,*<br><br>v.<br><br>CO JENKINS, ET AL.,<br><br>      *Defendants.* | CIVIL ACTION<br>NO. 16-04597 |

**PAPPERT, J.**                                                                                                   April 13, 2017

## **MEMORANDUM**

David Dewald, a prisoner, was denied access to a bathroom for thirty-five minutes on June 23, 2016. When Dewald defecated on a bench, he was placed in administrative segregation for eight to nine days. Dewald sued the corrections officers, the warden and the corporation that operates the prison, alleging violations of his Fifth and Eighth Amendment rights. The Defendants filed a motion to dismiss the Complaint which, for the following reasons, is granted in part and denied in part.

**I.**

On June 23, 2016 Dewald was in custody at the George W. Hill detention center in Delaware County. (Compl., at 9, ECF No. 3.) At 9:00 a.m. that day, Dewald was scheduled to speak with his defense attorney by video conference in a "video court" cell at the prison. (*Id.*) Dewald was ready and waiting outside his closed cell door at 9:00 a.m., but two inmates who were to join him in the video court cell were not, requiring Dewald to wait outside his cell. (*Id.*) By 9:05 a.m. Dewald had to use a restroom; he had rectal surgery roughly four years prior and "developed a medical problem going to the bathroom," something he told the prison's medical staff when he was committed.

1

(*Id.*)  Dewald—already in pain—was told that there was no restroom in the video court cell, so he approached an area where a guard could see him and motioned his cell number with his fingers, hoping to be allowed back in to use his toilet.  (*Id.*)  Dewald did this repeatedly before a guard outside noticed.  That guard, however, simply mimicked Dewald's motioning and refused to open his cell door.  (*Id.*)

Dewald then asked Corrections Officer Hiller why he was not being allowed back into his cell.  Hiller told Dewald to put his "man pants on and man up."  (*Id.*)  Dewald told Hiller his need to use the toilet was an emergency.  (*Id.*)  By 9:20 a.m. the two inmates who were joining Dewald in video court were ready and the trio was escorted to the video court cell.  (*Id.*)  Dewald was now "in real pain[,] about ready to defecate on [him]self."  (*Id.*)  He told another corrections officer of his predicament and there was no one available to take him to a restroom.  (*Id.*)  At 9:30 a.m., Dewald enlisted the help of his two fellow inmates to plead with the guard to permit him to use the restroom.  The trio repeatedly asked, to no avail.  (*Id.*)

By 9:35 a.m. Dewald could wait no longer.  He apologized to his two fellow inmates and "asked them to stand near the door and look at the guard with their backs to [him]."  (*Id.*)  To avoid soiling his clothing, Dewald defecated on a bench in the video court cell.  (*Id.*)  Dewald's fellow inmates told the guard of his mishap and were moved to an adjacent cell.  (*Id.* at 2.)  Dewald was kept in the video court cell.  (*Id.*)

Roughly five minutes later, another corrections officer entered the video court cell with napkins and a plastic bag, gave them to Dewald and ordered him to clean the bench.  Dewald refused and cleaned himself instead.  (*Id.*)  The corrections officer handcuffed Dewald and another corrections officer escorted him to his cell.  (*Id.*)

Shortly thereafter, Hiller transferred Dewald from his original cell to an empty cell, which Dewald alleges constituted administrative segregation. (*Id.*)

Dewald was kept segregated for eight to nine days. (*Id.*) He was not permitted any recreation time over his first weekend in segregation. (*Id.*) He was also denied showers until June 27, 2016. *See* (*id.*). Dewald was told by numerous corrections officers that if he would have cleaned the bench he would not have been placed in administrative segregation. (*Id.*)

## II.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citation omitted). While a complaint need not include detailed facts, it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

*Twombly* and *Iqbal* require the Court to take three steps to determine whether the second amended complaint will survive Defendants' motion to dismiss. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, where the complaint includes well-pleaded factual allegations, the Court "should

assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.* This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

This plausibility standard, however, "does not impose a heightened pleading requirement" and does not require a plaintiff to plead specific facts. *Id.* In other words, "courts cannot inject evidentiary issues into the plausibility determination." *Id.* The Third Circuit has also made it clear that "at least for purposes of pleading sufficiency, a complaint need not establish a prima facie case in order to survive a motion to dismiss" because a "prima facie case is an evidentiary standard, not a pleading requirement and hence is not proper measure of whether a complaint fails to state a claim." *Connelly*, 809 F.3d at 789 (internal quotations and citations omitted). Instead, a plaintiff should plead "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements." *Id.* (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008))

Because Dewald filed his complaint *pro se*, the Court "must liberally construe his pleadings." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citation omitted). "Courts are to construe complaints so 'as to do substantial justice,' keeping in mind that

4

*pro se* complaints in particular should be construed liberally." *Bush v. City of Philadelphia*, 367 F. Supp. 2d 722, 725 (E.D. Pa. 2005) (quoting *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004)). Moreover, in a § 1983 action, the Court must "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999)); *see also Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution." (quoting *Higgins*, 293 F.3d at 688)).

### III.

Dewald contends that the Defendants violated his rights under the Fifth and Eighth Amendments. *See* (Compl., at 9–10). To establish a *prima facie* case under § 1983, which permits Dewald to sue for violations of his constitutional rights, Dewald must first allege that a person acting under color of law deprived him of a federal right.[1] *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). He must also allege that the person acting under color of law "intentionally" violated his constitutional rights or acted "deliberately indifferent" in violation of those rights.

### A.

#### i.

Dewald first contends that corrections officers Hiller and Jenkins subjected him to excessive force and cruel and unusual punishment in violation of the Eighth Amendment by denying him access to a toilet for roughly thirty-five minutes on June

---

[1] "In the context of privately run prisons, courts have . . . found that private contractors who run prisons have acted under color of state law for purposes of § 1983. *McCullum v. City of Philadelphia*, No 98-5858, 1999 WL 493696, at *2 (E.D. Pa. July 13, 1999).

5

23, 2016.  (Compl., at 9.)  He alleges that they used excessive force by "maliciously and sadistically" denying him access to the toilet and by telling him to "man up" and put his "man pants on."  (Compl., at 9); (Pl.'s Rep. at 1).  The Defendants argue that, accepting the facts as pleaded, Dewald has failed to state a claim under § 1983 because the deprivation of a restroom for this brief period of time does not constitute an Eighth Amendment violation.  They contend that "the Eighth Amendment serves as the primary source of substantive protections" in an inmate's excessive force claims, and that Dewald has failed to allege facts to show that any Defendant's conduct rose to the level of cruel and unusual punishment.

Although Dewald's Complaint is silent on the matter, the Defendants presume that Dewald was a pretrial detainee.  (Defs.' Mem., at 9, ECF No. 14.)  Given his date of commitment (May 12, 2016) and the fact that he was to meet with his defense attorney on June 23, 2016, (Compl., at 9), the Court also presumes for the purposes of this motion that Dewald was a pretrial detainee.  The Fourteenth Amendment, not the Eighth Amendment, applies to pretrial detainees.  *Hubbard v. Taylor*, 399 F.3d 150, 157–58 (3d Cir. 2005) (citing *Bell v. Wolfish*, 441 U.S. 520, 530 (1979)).  The Fourteenth Amendment provides a pretrial detainee at least as much protection as the Eighth Amendment.  *Bell*, 441 U.S. at 545 ("*A fortiori*, pretrial detainees, who have not been convicted of any crimes, retain *at least* those constitutional rights that we have held are enjoyed by convicted prisoners." (second emphasis added)).  The particular boundaries of a pretrial detainee's Fourteenth Amendment's protections, however, depend on the cause of action alleged.

6

Dewald does not adequately state a claim that he was subjected to excessive force. Under the Fourteenth Amendment, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, ___ U.S. ___ (2015). Yet the Complaint does not allege that any of the Defendants used any force against him, let alone excessive force. Dewald instead alleges both verbal and nonverbal mocking: Corrections Officer Hiller telling him to "put [his] man pants on and man up," (Compl., at 9), and an unknown corrections officer mimicking his pleas to open his cell door so that he could use the restroom, (*id.*). These allegations fall well short of plausibly establishing a claim for relief against any of the Defendants. Moreover, there are no allegations in the Complaint that Warden Byrne was personally involved in any of the acts Dewald recounts. *See Rode v. Dellaciprete*, 845 F.2d 1195, 2017 (3d Cir. 1988). Dewald's claim for excessive force is therefore dismissed without prejudice. In his amended complaint, Dewald should also clarify whether he was a pretrial detainee or an inmate serving a prison sentence following conviction.

**ii.**

Dewald contends that being denied use of a toilet amounted to cruel and unusual punishment under the Eighth Amendment. Again, given his pretrial status, the Fourteenth Amendment governs his claim. While the Eighth Amendment bars cruel and unusual punishment—typically deprivations of "the minimal civilized measure of life's necessities," *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)—the Fourteenth Amendment's due process clause protects pretrial detainees from being punished *at all*. *Hubbard*, 399 F.3d at 166 (citing *Bell*, 441 U.S. at 536). Thus while violations of the

7

Eighth Amendment will amount to violations of the Fourteenth Amendment, conditions that do not violate the Eighth Amendment may nonetheless violate a pretrial detainee's due process rights. *See Bell*, 441 U.S. at 545; *Hubbard*, 399 F.3d at 166 ("The district court . . . erred in concluding that 'pretrial detainees are afforded essentially the same protection as convicted prisoners and that an Eighth Amendment analysis is appropriate for determining if the conditions of confinement rise to the level of constitutional violation.").

To determine whether a pretrial detainee's Fourteenth Amendment rights have been violated, courts "must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). "A particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) (quoting *Rapier v. Harris*, 172 F.3d 999, 1005 (7th Cir. 1999)). The intent to punish refers to the intent to punish for the crime the pretrial detainee is accused of, not an intent to impose discipline and order within a prison. *See Bell*, 441 U.S. at 535; *see also Sandin v. Conner*, 515 U.S. 472, 484 (1995) (noting that the *Wolfish* court "expressed concern that a State would attempt to punish a detainee *for the crime* for which he was indicted via preconviction holding conditions" (emphasis added)).

Dewald does not allege that he was denied a restroom as punishment for his crime. He does allege, however, that he was outside his cell waiting for his fellow

8

inmates to get ready and repeatedly asked to be let back into his cell to use the toilet. (Compl., at 9.) Construing the Complaint liberally, Dewald alleges that because the corrections officers were waiting for the other prisoners to get ready anyway, they lacked a rational, non-punitive reason not to permit him to reenter his cell and use the toilet.

Of course, "[i]n determining whether a restriction or condition is reasonably related to an institution's interest in maintaining security and order, courts must defer to the expertise of prison officials unless it is clear that they have overreacted." *McDowell v. Deparlos*, No. 15-0487, 2017 WL 1158093, at *8 (M.D. Pa. Feb. 2, 2017), *report and recomm. adopted*, No. 1:15-CV-487, 2017 WL 1134407 (M.D. Pa. Mar. 27, 2017) (*citing Bell*, 441 U.S. at 540 n.23). However, "at the motion to dismiss stage, it is not possible to discern whether the relationship between the appellant's detention in [administrative segregation] and a legitimate government objective is reasonable." *Stevenson*, 495 F.3d at 71. Rather, "[s]uch a determination may be properly made on a motion for summary judgment." *Id.* The motion to dismiss is therefore denied with regard to Dewald's claim that not being allowed to use a toilet violated his rights under the Fourteenth Amendment's due process clause.

### B.

### i.

Dewald next alleges that the Defendants violated his constitutional rights by depriving him of recreation and shower time during the first weekend of his stay in administrative segregation. The Court construes his Complaint to allege that the Defendants again violated his substantive due process rights under the Fourteenth

Amendment. The *Stevenson* framework applies here as well: "A particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose." *Stevenson*, 495 F.3d at 68 (quoting *Rapier*, 172 F.3d at 1005).

Dewald has not plausibly alleged that his rights were violated when he was placed in administrative segregation. He does not allege any facts to support "an expressed intent to punish" him for his underlying crime. Nor does he allege that his placement in segregation was unrelated to a non-punitive purpose or excessive in light of that purpose. *See* (Compl., at 10). And while Dewald alleges facts to show that his confinement in administrative segregation was substantially different from the conditions of the general prison population—he was not allowed to call his family, nor was he permitted any recreation time or a shower over his first weekend there, (*id.*)—he does not allege that these restrictions were excessive in light of any governmental purpose. *Cf. Bistrain v. Levi*, 696 F.3d 352, 374 (3d Cir. 2012) (finding that an inmate placed in administrative segregation for 447 non-consecutive days without any communal time or recreational activities, and provided with deficient or nonexistent medical care "raise[d] a reasonable inference that some of his time spent in administrative detention was excessive in light of any legitimate non-punitive government purpose for his segregation"); *Thomas v. Morgan*, No. 10-0907, 2012 WL 957638, at *3 (D. Del. Mar. 21, 2012) (finding plaintiff alleged sufficient facts to infer undue and impermissibly lengthy punishment where plaintiff was placed in isolation for one year due to four disciplinary write-ups). Dewald's claim that being placed in

administrative segregation violated his substantive due process rights is dismissed without prejudice.

## ii.

Dewald's Complaint also alleges that he was denied procedural due process. "Although pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being [segregated] indefinitely . . . without explanation." *Stevenson*, 495 F.3d at 69. "The degree of process required under the Fourteenth Amendment varies depending on the reason for the transfer to more restrictive housing, with greater process accorded to prisoners who are confined for disciplinary infractions than those moved for purely administrative reasons." *Stevenson,* 495 F.3d at 70. If a restraint is imposed for disciplinary reasons, a pretrial detainee is entitled to the process noted in *Wolff v. McDonnell*, 418 U.S. 539 (1974):

> (1) written notice of the misconduct charges at least twenty-four hours before the disciplinary hearing; (2) a written statement by the factfinder as to the evidence relied on and the reasons for the disciplinary action; and (3) a limited right to call witnesses and present documentary evidence in his defense when it would not be unduly hazardous to institutional safety or correctional goals to allow the inmate to do so.

*McDowell v. Deparlos*, No. 115-0487, 2016 WL 423778, at *8 (M.D. Pa. Jan. 7, 2016), *report and recomm. adopted*, No. 1:15-CV-0487, 2016 WL 407393 (M.D. Pa. Feb. 3, 2016) (citing *Wolff v. McDonnell,* 418 U.S. 539, 564–66 (1974); *Stevenson,* 495 F.3d at 70–71 (holding that *Wolff* governs prison disciplinary proceedings against pretrial detainees)).

Dewald alleges that during his segregation, numerous guards told him that if he "would have cleaned it up," he would not have been confined to administrative

11

segregation "and punished." (*Id.*) These allegations can be reasonably construed to allege that he was placed in administrative segregation for disciplinary purposes, and thus the *Wolff* standard applies. *See Sykes v. Carroll*, No. 06-0072, 2011 WL 5826054, at *7 (D. Del. Nov. 18, 2011). Dewald then alleges that he received no notice of his alleged misconduct; no written statement of the reasons for his discipline; and no opportunity to be heard as required by *Wolff*. (Compl., at 10.)

Construing the Complaint liberally, Dewald also alleges that he was never informed how long he was to be held in administrative segregation. *See Stevenson*, 495 F.3d at 69 ("Although pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being [segregated] *indefinitely* . . . without explanation." (emphasis added)). The Defendants' motion to dismiss Dewald's procedural due process claim is therefore denied.

### III.

"In civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *see also Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). Under Federal Rule of Civil Procedure 15(a), "courts may grant . . . amendments 'when justice so requires.'" *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2004) (citing FED. R. CIV. P. 15(a)). Dewald may amend his Complaint consistent with the Order that follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.